JAMES T. POTTER, Appellant, v. JOHN D. LONG.

Division Two, March 30, 1909.

CONVEYANCE: "Lands Belonging to Deceased." In 1856 Thomas Stockton conveyed the twelve-acre tract in dispute with other lands, to Linn, and in 1866 Linn conveyed to Thomas Jefferson Stockton, a son of the other Thomas. In 1867 the heirs of Thomas Stockton, Thomas Jefferson Stockton joining, conveyed "all our interest in the real estate of Thomas Stockton, deceased, contained in the following described lot, tract or parcel of land." Then follows a description of 120 acres, of which tract the twelve acres in dispute were a part. *Held*, that the last deed did not convey, nor did it attempt to convey, the land that had previously been conveyed to Linn; and plaintiff, who claims under this deed of the heirs, did not acquire the interest of Thomas Jefferson Stockton in the twelve acres. The deed of the heirs conveyed only so much of the 120-acre tract of which Thomas Stockton died the owner.

Appeal from Barry Circuit Court.—*Hon. F. C. Johnston,* Judge.

AFFIRMED.

Norman Gibbs, D. H. Kemp and R. H. Davis for appellant.

T. D. Steele for respondent.

FOX, J.—This cause is now pending before this court upon an appeal on the part of the plaintiff from a decree and judgment in favor of the defendant.

This proceeding is one brought under the provisions of section 650, Revised Statutes 1899, to ascertain and determine the title to 12 acres of land in the northeast quarter of the southeast quarter, section 23, in township 24, range 26, lying south of Flat creek, in Barry county, Missouri. The petition is in the usual form and alleges that plaintiff has been for twenty years or more last past in possession of the land in controversy. It also alleges that defendant makes claim, asserts title and interest in and to the property described in the petition. Then follows the prayer of the plaintiff that the court ascertain and determine the estate, title and interest of the parties to this litigation in the real estate involved.

The answer of the defendant denies that plaintiff is in possession of the premises mentioned, or any part thereof, and also denies that plaintiff has any valid claim to said premises, or that he is seized of an estate of inheritance in said premises. The answer further alleges and states that the defendant is in the absolute and exclusive possession of said premises, and that he and his grantors and their ancestors have been in the peaceable, continuous, open, notorious and adverse possession of said premises for more than thirty years before the institution of this action, and that defendant is the owner of said premises in fee simple absolute. Following this the defendant prays that the court adjudge and decree all the right, title and interest claimed by plaintiff, of and to the said premises mentioned in plaintiff's petition, to be in defendant, and that plaintiff be divested of all claim thereto, and for all other proper relief.

Upon the trial it was conceded that Thomas Stockton was the common source of title. It was also shown that on the 7th day of August,

1856, Thomas Stockton and wife, by warranty deed, .conveyed the land in controversy to Alexander Linn, which deed was duly recorded in the recorder's office, and on March 5, 1866, Alexander Linn and wife conveyed the said land with other lands, to Thomas Jefferson Stockton. This deed was duly recorded on the 25th day of April, 1867, in Book H, of the recorder's office of Barry county, at pages 142 and 143, and recorded in Book 64, page 267.. Plaintiff also introduced in evidence a deed dated August 21, 1867, from J. Stockton and others, including T. J. Stockton, to B. G. Eden, by which it was sought to convey their interest in the real estate of Thomas Stockton, deceased. Said deed being in the following words and figures:.

"(50 cents)

"(Thomas Stockton)

"Know all men by these presents that James Stockton, and Rebecca Stockton, Jonathan Eden and Matilda Eden, and S. I. Stockton, Madison Walker, and Rachel Walker, of the county of Barry, and State of Missouri, for and in consideration of the sum of two hundred and seventy-five dollars, account to them in full satisfaction of B. G. Eden, of Barry county, State of Missouri, the receipt whereof is hereby acknowledged, do give, grant, bargain, and sell, and convey, unto the said B. G. Eden, and to his heirs and assigns, all our interest in the real estate, of Thomas Stockton, deceased, contained in the following described lot, tract, or parcel of land, viz.:

"Commencing at the south half of the northeast quarter of section twenty-three, in township twenty-four, of range twenty-six, and the northeast quarter, of the southeast quarter, of section twenty-three in township twenty-four, of range twenty-six, to have and to hold the above granted and bargained, premises with the appurtenances thereof unto the said B. G.

217 Sup—39

Eden, his heirs and assigns, in fee simple forever, to their proper use and behoof, and further we the said James Stockton, Rebecca and Jonathan Eden and Matilda Eden, and T. J. Stockton, and Madison Walker and Rachel Walker, to covenant to and with the said B. G. Eden, that at and until the unseating of these present, we were seized of the above granted, and bargained premises, as a good and indefeasible estate in fee simple that the same are free from all encumbrance and that we will forever warrant and defend the title thereof to the said B. G. Eden, his heirs and assigns against all claims and demands whatsoever. And I Rebecca Stockton, wife of James Stockton, and Matilda Eden, wife of Jonathan Eden, and Rachel Walker, wife of Madison Walker, do hereby relinquish our right of dower in said estate as described for the above consideration aforesaid.

"In testimony whereof we have hereunto set our hands and seal this 21st day of August, in the year of our Lord, one thousand eight hundred and sixty-seven.

"Sumuel T. Clemens.                     Matilda Eden.
                                                          his
Beththane Clemon.              T. J. (x) Stockton.
                                                       mark.
            his
James (x) Stockton.                    Madison Walker.
          mark.

          her                                       her
Rebecca (x) Stockton.           Rachel (x) Walker.
        mark.                                        mark.
Jonathan Eden.

"State of Missouri, County of Barry, ss.

"Be it remembered that, James Stockton and Rebecca Stockton, and Jonathan Eden, and Matilda Eden, and T. J. Stockton, Madison Walker, and Rachel Walker, who are personally known to the undersigned justice of the peace to be the persons whose names are sub-

scribed, to the foregoing deed, to be the parties thereto, this day appeared before me and acknowledged, that they executed and delivered, the same as their voluntary act and deed, for the use above specified, and the said wives by me made acquainted with the contents of said deed, acknowledged that they executed the same and relinquished the right of dower in said estate, before me this 21st day of August, 1867.''

To this deed counsel for defendant interposed an objection for the reason that it does not convey or purport to convey any interest of the grantor, except such interest as might be in the estate of Thomas Stockton, and for the further reason that the record of the deed as heretofore introduced by the plaintiff shows that the land in controversy had long before that time been conveyed to Jeff Stockton, hence it is urged at the time of the execution of this deed the estate of Thomas Stockton owned no interest in this real estate, nor did any of the parties by reason of being his heirs, the title having long since passed from Thomas Stockton. The objection to this deed is also urged that it is void for want of sufficient description of the property.

Plaintiff next offered in evidence a general warranty deed dated March 19, 1869, from Bolin G. Eden and 'wife to Peter Hought, which deed sought to convey the south half of the northeast quarter of section 23, township 24, range 26, and the northeast quarter of the southeast quarter of section 23, township 24, of range 26, containing one hundred and twenty acres.

Following this there was offered in evidence a general warranty deed, dated February 26, 1871, which was filed for record October 22, 1904, Book 79, page 620, from Peter Hought and wife and J. M. Stockton to Hastin Potter, by which deed it was sought to convey the same land as is described in the deed from Eden and wife to Peter Hought. Following this plaintiff offered in evidence a general warranty deed, dated

the 13th of January, 1875, from Hastin Potter and wife, conveying to James T. Potter the land described in the immediately preceding deeds offered in evidence by the plaintiff.

Numerous witnesses were introduced by plaintiff, but we deem it unnecessary to set out their testimony in detail. It is sufficient to say that this testimony tended to show that the plaintiff had been in possession of the twelve acres of land in dispute in this action and that plaintiff and his grantors had been paying the taxes on it for a number of years. The testimony of some of these witnesses tended to show that T. J. Stockton was occupying these premises as a mere tenant and accounting to the plaintiff for rent. There was other testimony introduced by the plaintiff to show that the defendant was the owner of seventeen acres on the north side of Flat creek, the northwest quarter of the southwest quarter of section 22, which adjoins on the east the quarter section in which the land in controversy is located, and that the plaintiff claimed to own the twelve acres of land in controversy on the south side of Flat creek, and that by mutual consent, brought about by the way the creek cut through the two forties, it was agreed that Thomas Jefferson Stockton should use, occupy and cultivate the twelve acres in controversy on the south side of the creek, and that plaintiff should use, occupy and cultivate the seventeen acres on the north side of the creek; the use and occupancy of the one being a stand-off for the use and occupation of the other. It was claimed by the plaintiff, and there was some testimony tending to establish that fact, that Thomas Jefferson Stockton occupied the land in controversy as the tenant of the plaintiff, and the plaintiff's grantors, and not under claim of title in himself. This is a sufficient indication of the nature and character of the oral testimony on the part of the plaintiff.

The defendant offered in evidence record book 79,

page 477, being a warranty deed, dated April 1, 1904, filed for record June 16, 1904, from M. E. Stockton, by C. D. Manley, attorney in fact, to Benton Robbins, to the land in controversy. This conveyance was properly acknowledged and was in following form:

"General warranty deed by attorney in fact.

"Know all men by these presents that I, the undersigned, M. E. Stockton of the Chicksaw Nation Ind. Territory, by C. D. Manley Attorney in fact, of the City of Cassville, County of Barry and State of Missouri, duly authorized by letter of attorney under my hand, and seal in consideration, of the sum of one hundred and fifty and no-100 dollars to him paid in hand, by Benton Robbins of the County of Barry, and State of Missouri, do hereby grant, bargain, sell and convey to the said Benton Robbins heirs and assigns forever, the following  described real estate lying, being, and situate in the County of Barry and State of Missouri, to-wit:

"All the right, title and interest of M. E. Stockton as widow of T. J. Stockton deceased in the following lands set off to M. E. Stockton, as widow's dower, viz.: One and one half acres in the northeast corner of the northwest quarter, of the northeast quarter, of section 26, also the undivided one-half interest in the northwest qr. southeast qr. section 23, also southwest quarter of southeast quarter sec. 23, also southeast quarter of southeast quarter, sec. 23, also southwest quarter of southwest quarter, sec. 24, also all that part of northeast quarter of southeast quarter of section 23, lying south of Flat creek, being 12 acres more or less, and all in township 24, range 26.

"To have and to hold the said premises, with all the privileges and appurtenances, to the same belonging to the said Grantee and to his heirs and assigns forever. And I the said M. E. Stockton, By C. D. Manley Atty. in fact do covenant with the said grantee and with his heirs, that I rightfully seized in fee of the

said premises that they are free of encumbrance except as above that I have good right to sell and convey the same in manner aforesaid. And that I and my heirs, executors, administrators, will warrant and defend the title to the said premises to the said Grantee and to his heirs and assigns forever against the legal claims and demands of all persons whomsoever except as above mentioned.

"In testimony whereof, I have by C. D. Manley said attorney, hereunto set my hand and seal this first day of April, A. D. one thousand nine hundred and four.

"M. E. Stockton (Seal)            By C. D. MANLEY,
                                       "Attorney in fact.

"State of Missouri, County of Barry, ss.

"On this the 14th day of June, 1904, before me personally appeared I. M. Stockton, who by me being first duly sworn, deposeth and says, that he is personally acquainted with the heirs of T. J. Stockton, deceased, and that Mary E. Stockton, his widow, and T. J. Stockton, C. E. Stockton, M. I. Huse, formally M. I. Stockton, Pearl Langston, formally Pearl Stockton, Minnie Fare, formally Minnie Stockton, Norman J. Stockton, Lennie Stockton, Embre Stockton, Luster Stockton, and Myrtle Stockton, are all and only heirs of T. J. Stockton deceased.

Attest mark.                          his
    C. D. MANLEY.               · J. M. (x) STOCKTON.
                                      mark.

"Subscribed and sworn to before me this 14th day of June, 1904.

                                 C. D. MANLEY,
"(L. S.)                         Clerk of the County Court.

"Filed for record this 16th day of June, 1904, at 8:45 a. m. A. L. Galoway.

"By W. E. McKINNEY, Dep."

Following this the defendant next offered in evidence a warranty deed from N. J. Stockton and wife to

Benton Robbins, dated May 23, 1904, and recorded August 13, 1904, in book 82, page 250. This conveyance embraced the land in controversy and was duly acknowledged.

Defendant next offered in evidence a warranty deed dated May 21, 1904, recorded June 16, 1904, in book 82, page 137, from C. E. Stockton and wife and M. I. Huse and her husband, C. H. Huse, to Benton Robbins. This deed embraced the land in controversy, particularly mentioning the twelve acres more or less south of Flat creek, which is the land in dispute in this controversy.

There was next offered in evidence a deed dated May 23, 1904, from Pearl Langston (formerly Pearl Stockton) and J. S. Langston, her husband, and Minnie Fare (formerly Minnie Stockton) and B. F. Fare, her husband, of Barry county, Missouri, to Benton Robbins, conveying the land in controversy. This deed was duly acknowledged.

Defendant next offered in evidence a warranty deed from T. J. Stockton and wife, heirs of T. J. Stockton, deceased, to Benton Robbins, dated June 13, 1904; recorded in book 82, page 135. This deed described and undertook to convey the land in controversy, and was duly acknowledged.

Finally defendant offered in evidence the deed from Benton Robbins and wife to John D. Long, the defendant in this cause. This was a warranty deed, made by Robbins and wife of Cassville, Missouri, to John D. Long of the county of Barry in the State of Missouri. This deed undertook to convey and described particularly the twelve acres of land in controversy, lying south of Flat creek, and was duly acknowledged.

The defendant next offered in evidence the petition filed in the probate court of Barry county, on July 13, 1903, of Mary E. Stockton, the widow of T. J. Stockton, to set out homestead. This petition substantially stated that Mary E. Stockton was the widow

of T. J. Stockton and that on the 26th day of November, 1902, T. J. Stockton, late of said county, deceased, was seized and possessed in fee simple of certain described lands. Then followed the description of the land of which the deceased, T. J. Stockton, was possessed, embracing the particular description of the twelve acres of land in controversy. Following this was the order of the probate court, dated the 10th day of August, 1903, that a homestead be set off to Mary E. Stockton, widow of T. J. Stockton, deceased, and appointing J. M. Etheridge, Chas. P. Albright and Len Boucher as commissioners to set out homestead to the widow and minor children of said deceased. Defendant also offered in evidence the report of the commissioners by which the homestead and dower of the widow of T. J. Stockton was assigned and set off. The homestead as set off embraced by a particular description the twelve acres of land in dispute in this controversy.

Following this record testimony the defendant and numerous other witnesses were introduced on the part of the defense to this action, all of which evidence tended to prove that T. J. Stockton went into possession of this land after the purchase of it in 1866 from Mr. Linn; had it fenced and cultivated it from that time up to the time of his death in 1902. A number of witnesses stated that they had never heard until a year or two before this suit was brought of anyone else claiming any title to this twelve acres of land except T. J. Stockton. Jack Stockton, who was a brother of T. J. Stockton, deceased, stated that his brother had occupied and cultivated this twelve acres of land in dispute from the time he bought it. This witness made further references to the deed executed by him and other heirs of Thomas Stockton to Eden, and explained that the deed was a mere conveyance to whatever interest he had in his father's, Thomas Stockton's, estate. Judge M. A. Gallaway was introduced as a witness on the part

of the defendant. He substantially stated that Thomas J. Stockton had been in possession of and cultivated the twelve acres of land in dispute from the time he bought it, which was some time in 1866, up to the time of his death, and that during all that time he did not see anybody else exercising control or ownership over it, nor had he ever heard anybody claiming title to that land. Mr. Sam Langston was called as a witness on the part of the defendant. His testimony tended to show that the plaintiff tried to buy the interests of the heirs of T. J. Stockton.

R. B. Hughes was called as a witness for the defendant. His testimony tended to show that T. J. Stockton occupied and cultivated the twelve acres of land in dispute, and that he had heard Mr. Stockton say that the land on the south side of the creek was his, and heard him say that several times. His testimony further tended to show that he never heard of anybody else claiming it.

Peter J. Stockton also testified in behalf of the defendant. He was a son of T. J. Stockton. His testimony was that his father claimed the twelve acres of ground in dispute; was in possession of it and cultivated it for years.

Another son of T. J. Stockton, Elbert Stockton, testified. He says that his father lived on this twelve acres of land; the land enclosed by the fence. This witness was twenty-three years old; he says that his father had been in possession of it ever since he could remember, and that his father stated that the land on the south side of the creek was his land and that on the north side of the creek was Potter's; that was what he always taught us, and that plaintiff never made any claim to this twelve acres of land until after his father died.

Abe Stockton testified as a witness for the defendant. He was a nephew of T. J. Stockton. This witness was 29 years old. He testified that he had practically

all of his life lived close to this land and that during all the years that he lived near the land he never heard of anyone claiming it other than T. J. Stockton. After the death of T. J. Stockton he rented the land from Mr. Manley, Mrs. Stockton's agent.    He and Lee Weaver went into possession of the land together.

Mr. C. D. Manley testified. He was the administrator of the estate of T. J. Stockton; also guardian for minor heirs.    He took charge as administrator of the forty east of the forty in controversy; this forty he was ordered to sell by the probate court.    This forty he sold at administrator's sale and it was purchased by Mr. Potter.    He testifies that the balance of the estate was set off to the widow, including the twelve acres in controversy.    He further testified that he had charge of this twelve acres as agent of Mrs. Stockton and that in December, 1903, he leased it to Jack and Abe Stockton; afterwards    Mr. Weaver took Jack Stockton's place.    In 1903 he says that Mr. T. J. Stockton lived on the land, and the first time that he was ever informed by Mr. Potter that he made any claim to this twelve acres in controversy was in October, 1904.    He further testified that Mr. Potter, after he bought the thirty-five acres of land at the administrator's sale, wanted to negotiate with him in reference to the other tract of land, the tract set off to the widow as her homestead and dower, and at that time he never claimed any interest in this land in controversy.

This is a sufficient indication of the nature and character of the testimony upon which this cause was submitted to the court to enable us to determine the legal propositions disclosed by the record.    The cause was submitted to the court, and after due consideration the court found the issues for the defendant, and recited in the judgment that the defendant was the owner in fee of a six-tenths undivided interest in the premises, and that the plaintiff has no right or title to

said premises in law or equity. It was then ordered by the court that the plaintiff be divested of whatever interest he may have heretofore claimed in said premises adverse to that of defendant, and that he be barred forever from claiming or asserting the same, and that plaintiff take nothing by his action in this behalf and that defendant recover of plaintiff costs of this action and that execution issue therefor.

A timely motion for new trial was filed and by the court overruled. From the judgment and decree rendered in this cause the plaintiff prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

The errors assigned by the appellant, as disclosed by the record, are:

First. That the judgment of the court is against the weight of the testimony, and the judgment upon the testimony should have been for the plaintiff.

Second. That the court admitted irrelevant and immaterial testimony on the part of the defendant, over objections and exceptions of plaintiff.

It is apparent that appellant relies upon the first assignment of error as the principal ground for the reversal of this judgment, that is, that the judgment of the court is against the weight of the testimony, and the judgment upon the testimony should have been for the plaintiff.

## I.

Directing our attention to the main assignment of error in this cause, it is apparent that the legal propositions rest within a very narrow compass. At the very threshold of the consideration of the legal propositions submitted to our consideration in this cause it is important to determine the force and effect of the conveyance of August 21, 1867, by the heirs of

Thomas Stockton, deceased, to B. G. Eden. If this conveyance had the force and effect of conveying the title to the twelve acres of land in dispute then it will be necessary to direct our attention to the oral testimony concerning the claim of adverse possession by the defendant and his grantors. But if on the other hand this conveyance did not pass the title to Eden to the land in dispute then it will not be essential to give any attention to the oral testimony as to the dispute between the parties as to who was in possession.

The record discloses and it is conceded that Thomas Stockton is the common source of title, and plaintiff offered in evidence a deed from Thomas Stockton to Alexander Linn, and the deed from Linn to Thomas Jefferson Stockton. Following this is the deed of August 21, 1867, from the heirs of Thomas Stockton, deceased, to B. G. Eden.

The defendant relies upon the deeds offered by the plaintiff, together with the deeds offered in evidence by the heirs of Thomas Jefferson Stockton to Benton Robbins, as well as the conveyance from Benton Robbins to the defendant in this cause.

Clearly if the deed from the heirs of Thomas Stockton to B. G. Eden in 1867, passed the title to the land in controversy, then the conveyance by the heirs of Thomas Jefferson Stockton to Benton Robbins and from Benton Robbins to the defendant in this cause, did not pass any title. So on the other hand, if the deed of August 21, 1867, by the heirs of Thomas Stockton, deceased, to B. G. Eden, did not pass the title to the land in controversy, then the deeds by the heirs of Thomas Jefferson Stockton to Benton Robbins and from Benton Robbins to the present defendant did pass the title, and the defendant would be the record-title owner of the premises in controversy. Thus it will be seen the importance of first determining the legal effect of the deed of 1867 by the heirs of Thomas Stockton, deceased, to B. G. Eden.

It is earnestly contended by appellant that the deed of 1867 to B. G. Eden passed the title to said Eden to the land in controversy. On the other hand, it is within equal earnestness insisted that such deed did not convey any interest whatever to the land in controversy. We have carefully analyzed this deed of 1867 to B. G. Eden, and in our opinion it did not convey any interest in the twelve acres of land in dispute. Thomas Stockton on August 17, 1856, conveyed the title to the land in dispute to Alexander Linn, and in 1866 Linn conveyed the land in dispute to Thomas Jefferson Stockton. The deed of 1867 to B. G. Eden expressly recites that they "grant, bargain, and sell, and convey unto the said B. G. Eden, and to his heirs and assigns, all our interest in the real estate of Thomas Stockton, deceased, contained in the following described lot, tract, or parcel of land, viz.:" Now it will be observed that this deed expressly limits the conveyance to the interest of those heirs in the real estate of Thomas Stockton, deceased. Manifestly Thomas Stockton, deceased, had no interest in the twelve acres of land in dispute, for the reason that he had conveyed all his interest in said land in 1856 to Alexander Linn, and Linn had conveyed in 1866 said land to Thomas Jefferson Stockton. Again it is extremely doubtful as to whether the description of the land in the deed of 1867 to B. G. Eden is sufficient. It recites: "The following described lot, tract, or parcel of land, viz.: Commencing at the south half of the northeast quarter of section twenty-three, in township twenty-four of range twenty-six, and the northeast quarter of the southeast quarter, of section twenty-three in township twenty-four, of range twenty-six." To say the least of it that is a very unsatisfactory description of the land, "commencing at the south half of the northeast quarter." At what point in the south half is left to conjecture, and it undertakes to give the commencing point without designating at what point

the description shall end. However, for the purposes of this case, let it be conceded that the description is full enough and embraced the land as therein designated, omitting the words, "commencing at," yet in our opinion this deed was limited to the conveyance of whatever interest these heirs had in the real estate of Thomas Stockton, deceased. Thomas Stockton, deceased, did own a part of the land embraced in the description in the deed to Eden. At the time of his death he owned that portion of the northeast quarter of the southeast quarter lying just north of Flat creek, but the twelve acres of land in dispute lying south of Flat creek had been conveyed in 1856 by Thomas Stockton to Alexander Linn. Again, it will be observed by the language employed in the deed to B. G. Eden that it was not contemplated by that conveyance to pass the title to all the land embraced in the deed, and it was not understood that Thomas Stockton, deceased, owned all of the land described in such deed, for the reason that the deed recites that the heirs of Thomas Stockton, deceased, convey only their interest in the real estate of Thomas Stockton, deceased, *contained* in the following described lot, tract, or parcel of land. In other words this deed undertook to convey whatever interest the heirs of Thomas Stockton, deceased, had in any real estate which may have been embraced within the description. Clearly this deed must be limited to a conveyance of the interest of the heirs in the real estate owned by Thomas Stockton at the time of his death. The title to whatever real estate owned by Thomas Stockton that was embraced in the deed to Eden, passed by this deed, but the significant terms used by the heirs in the conveyance to Eden that they were only conveying their interest in the real estate of Thomas Stockton, deceased, contained in the description embraced in the deed, clearly indicate that such conveyance did not undertake to

convey the land in dispute, nor was it the intention of
the heirs to convey such land.

Having reached the conclusion that the deed of
1867 to Eden did not pass the title to the land in dis-
pute, it logically follows from the conveyance intro-
duced that Thomas Jefferson Stockton had the legal
title to such land at the time of his death, and his heirs
by their conveyance to Benton Robbins, and the deed
from Benton Robbins to the defendant in this cause
places the legal title to the land in controversy in this
defendant.

As to the oral testimony developed upon the trial
of this cause, it is sufficient to say that in our opinion
the preponderance of evidence tends to establish the
fact that Thomas Jefferson Stockton upon the pur-
chase of this land in 1866 from Alexander Linn went
into possession of such land and continuously occu-
pied and cultivated it up to the time of his death.
The testimony further indicates that neither the plain-
tiff nor his grantors made any claim of title to this
property until after the death of Thomas Jefferson
Stockton. It is significant that the probate court in
administering the estate of Thomas Jefferson Stock-
ton should proceed to appoint commissioners to set off
the homestead of the widow, and that the commis-
sioners in pursuance of such appointment should as-
sign to her as a part of her homestead the identical
land in dispute, and yet the plaintiff or his grantors
should not have at least known something about these
proceedings. This twelve acres of land was assigned
by the commissioners to the widow of Thomas Jeffer-
son Stockton and she subsequent to this time rented
it through her agent, Mr. Manley, to other parties
and they accounted to her or her agent for the rent.
The oral testimony strongly preponderates in favor
of the defendant that Thomas Jefferson Stockton was
in possession of this land and claimed the same as his
own for over thirty years. This, together with the

appropriate conveyances from the heirs and widow of the deceased Thomas Jefferson Stockton conveying the title to the defendant, emphasizes the correctness of the conclusion reached by the trial court, that is, that the title to this land was vested in the defendant and that the plaintiff had no interest therein.

Entertaining these views, in our opinion the judgment and decree of the trial court was entirely proper and should be affirmed, and it is so ordered.

All concur.